LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | | Date | September 1, 2016 |
|---|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Anel Huerta | Not Present | N/A |
|---|---|---|
| Relief Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:**        (IN CHAMBERS)

### ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [59] AND DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF WILLIAM BUCKLEY [73]

Pending before the Court are two motions: (1) Plaintiff's motion for class certification, (Dkt. No. 59 (hereinafter, "Pl.'s Mot.")); and (2) Defendant's motion to strike the declaration of William Buckley ("Buckley's Decl."), (Dkt. No. 73 (hereinafter, "Def.'s Mot.")). The Court held a hearing on these matters on August 29, 2016. After considering the parties' papers, the deposition testimonies, and the expert declarations, the Court **GRANTS** Defendant's motion and **GRANTS in part** Plaintiff's motion.

## I.    BACKGROUND

### A. Factual History

This is a putative class action brought under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770. Plaintiff asserts a claim against Hewlett Packard Company ("HP"). (*See* Second Amended Class Action Complaint ("SAC") ¶ 73.)

HP is headquartered and maintains its principal place of business in California. (SAC ¶ 2.) HP engages in the manufacture, sale, and distribution of computers and related equipment and services. (SAC ¶ 2.) On or around April 25, 2015, Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

purchased an HP Laserjet P1102[1] printer ("Printer") and items ancillary thereto for
$194.25. (Declaration of Todd M. Friedman ("Friedman's Decl."), Ex. 12; SAC ¶¶ 33–
35.) Plaintiff "wanted a printer that was effortless [to install] and could start printing
right away." (SAC ¶ 38–40.) Plaintiff alleges that she chose to purchase this particular
Printer, foregoing several others, in reliance on the written advertisements on the side of
the carton. (*Id.*) On the Printer's carton, Defendant advertised a printer software
installation mechanism: "Start printing right away with effortless setup – no CD
installation required – using HP Smart Install." (*See* SAC ¶ 37, Ex. A.) Plaintiff
experienced difficulty in installing her Printer; it was not "effortless for her" and she "felt
cheated and ripped off by HP." (Declaration of Anne Wolf ("Wolf's Decl.") ¶¶ 7–8.)

Plaintiff's difficulty installing the Printer arose because the Windows 8 software
system's auto-run capabilities could not recognize the Smart Install Feature ("SIF").
(Derr's Dep. 17:17–20.) HP developed, patented, and trademarked the SIF in 2009 to
simplify the installation of its Laserjet printers. (Friedman's Decl., Ex. 13; Deposition of
Curtis Derr ("Derr's Dep.") at 17:16–23.) As a result of the technical difficulties with the
SIF on Windows 8 computers, HP received complaints from customers. (Friedman's
Decl. Ex. 17; Derr's Dep. 51:16–53:23.) In response, HP disabled the SIF in all printers
manufactured and sold into the market. (Friedman's Decl. Ex. 28; Derr's Dep. 54:14–
55:16.)

However, HP failed to coordinate the timeline for deactivating SIF with the
scheduled updates to the advertising on the Printers' packaging. (Derr's Dep. 56:3–58:3,
109:16–112:10.) Two months after disabling the SIF, HP updated the pamphlet included
inside the Printers' cartons explaining that the SIF feature had been disabled. (Derr's
Dep. 109:16–112:10; Friedman's Decl., Exs. 20, 31.) Seven months after the
disablement, HP created new artwork for the packaging. (*Id.*) Finally, approximately one
year after the disablement of the SIF, HP updated the advertising on the outside of the
printers' cartons. (*Id.*) The delay in updating the carton itself allegedly occurred because
HP's head of technical marketing for Laserjet products determined that incurring a cost

---

[1] In contrast to the printer model specified in Plaintiff's Motion, in her SAC, Plaintiff identifies the
printer model at issue to be the "HP LaserJet P1002w" model.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | **ANNE WOLF V. HEWLETT PACKARD COMPANY** | | |

of approximately $700,000 to scrap and replace hundreds of thousands of stockpiled boxes bearing the SIF advertising was "hardly justified." (Friedman's Decl., Ex. 39.)

**B. Procedural History**

On June 22, 2015, Plaintiff initiated the action by filing her Complaint, alleging violations of California Business and Professions Code § 17200 ("UCL") and California Business and Professions Code § 17500 ("FAL"). (Dkt. No. 1.) Plaintiff filed the operative complaint, her Second Amended Complaint ("SAC"), on April 25, 2016. (Dkt. No. 50.) The SAC reflects the Court's April 18, 2016 dismissal of the Plaintiff's UCL and FAL claims, and the August 17, 2015 amendment of the Complaint to include a cause of action under the CLRA. (*Id.*) On May 5, 2016, Defendant filed its Answer to the SAC. (Dkt. No. 51.) On June 20, 2016, Plaintiff filed the instant Motion to Certify Class along with a Request for Judicial Notice. (Dkt. Nos. 59, 57.) In support of her Motion, Plaintiff proffered the Declaration of William Buckley on June 27, 2016. (Dkt. No. 59-2 ("Buckley's Decl.").) In her Motion, Plaintiff specifies one class and one subclass for which she seeks certification:

- **Class 1:** All consumers, who, between in or about April 2014 and the present, purchased one or more HP Laserjet P1102 printers in the United States, and whose printer was advertised to include the HP Smart Install feature, but was in fact subject to HP's disablement of the Smart Install Feature.

(Pl.'s Mot. at 2.)

- **Subclass 1:** All consumers, who, between in or about April 2014, and the present, purchased one or more HP Laserjet P1102 printers in the state of California, and whose printer was advertised to include the HP Smart Install feature, but was in fact subject to HP's disablement of the Smart Install Feature.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | | Date | September 1, 2016 |
|----------|------------------------|---|------|-------------------|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | | |

(*Id.*)  In formulating this class and subclass, Plaintiff has modified the class description she sought to represent in his SAC.[2]  (*Cf.* SAC ¶ 57.)

On July 19, 2016, Defendant timely filed its Opposition to the Motion.  (Dkt. No. 67 (hereinafter, "Def.'s Opp'n").)  On August 1, 2016, Plaintiff filed its Reply to Defendant's Opposition.  (Dkt. No. 78 ("Reply").)  On July 21, 2016, Defendant filed the instant Motion to Strike the Declaration of William Buckley.  (Dkt. No. 73 (hereinafter, "Motion to Strike").)  On August 8, 2016, Plaintiff filed her Opposition to Defendant's Motion to Strike.  (Dkt. No. 84 (hereinafter "Pl.'s Opp'n").)  Finally, on August 15, 2016, Defendant filed its Reply to the Plaintiff's Opposition to the Motion to Strike. (Dkt. No. 88).

## II.    JUDICIAL NOTICE

Plaintiff requests that the Court take judicial notice of nine documents filed with the Court in this matter: (1) A copy of Smart Install Frequently Asked Questions; (2) A copy of Staples's HP Laser Jet Pro P1102W Product Page; (3) A copy of Office Depot's HP Laser Jet Pro P1102W Product Page; (4) A copy of Defendant Hewlett Packard Company's HP LaserJet Pro P1102W Printer Ink Cartridges Product Page; (5) A copy of Defendant Hewlett Packard Company's Printer Update Instructions; A copy of Amazon Customer Reviews of HP LaserJet Pro P1102W Wireless Monochrome Printer; (7) A copy of Amazon Customer Reviews of HP LaserJet Pro P1102w Printer; (8) A copy of Amazon's HP Laser Jet P1102 W Product Page; and, (9) A copy of Defendant Hewlett Packard Company's How To Use HP Smart Install Video.  (*See* Dkt. No. 57 ¶¶ 1–9.)

Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may properly take judicial notice of matters in the public record.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  *See*

---

[2] The Court will consider the narrower Class and Subclass descriptions specified in Plaintiff's Motion for reasons explained below.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|----------|------------------------|------|-------------------|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). The documents here are matters of public record. When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true. *Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.118 (9th Cir. 1999).

"Two related concerns, however, generally caution against taking judicial notice of websites. First, as the Seventh Circuit recognized, the internet contains an unlimited supply of information with varying degrees of reliability, permanence, and accessibility." *United States v. Kane*, No. 2:13-CR-250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. Oct. 28, 2013) (citing *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011). Corporate websites, in particular, are often marketing tools that contain more "puffery" than fact. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3rd Cir. 2007). Before taking judicial notice of facts contained in websites, the Third and Seventh Circuits advise authenticating printouts of the webpage under Rule 901, supporting the printouts with affidavits, or holding a hearing on the facts to be noticed in order to give the opposing party an opportunity to respond. *Kane*, 2013 WL at *9; *Pickett*, 664 F.3d at 648.

Here, the Court finds that the concerns raised by the Third and Seventh Circuit, and applied in *Kane*, are not present with regard to Exhibits A, D, E, and I for the following reasons. First, these exhibits reflect product pages published by Defendant itself, which are highly relevant to material issues in this case. Defendant's opponent offers the Exhibits. Thus, the evidentiary objections raised by Defendant, such as relevancy, foundation, and hearsay, are not appropriate here. Second, Defendant, rather than Plaintiff or a third party, had sole control over the information published. As such, concern over the accuracy of the source is decreased (unless Defendant concedes that information it publishes with regard to its products is inaccurate). Third, it is not necessary to provide HP with an evidentiary hearing. HP had opportunity to respond in any reply briefs and at oral argument. Fourth, the statements on Defendant's website are not necessarily being introduced for their truth. Rather, the Exhibits establish Defendant's advertising of the Printers, which constitutes a permissible showing of

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

information in the public realm. *See Heliotrope*, 189 F.3d at 981 n.118. Accordingly, this Court **GRANTS** Plaintiff's request for judicial notice of Exhibits A, D, E, and I.

In contrast, Exhibits F and G raise concerns of the nature suggested in *Kane*. Firstly, product review sections of an online merchant and commerce platform, indeed are open-source, allowing publication of opinions and statements that cannot be accurately and readily determined by resort to sources whose accuracy cannot reasonably be questioned. Second, the facts that Exhibits F and G are offered to prove cannot readily be determined due to the Plaintiff's imprecise request for notice. Third, Defendants, justifiably, contest the accuracy of the sources of the information in Exhibits F and G, because reviews may be left anonymously or under pseudonym. Fourth, the large number of statements contained in the Amazon reviews raises evidentiary concerns including but not limited to foundation, hearsay, and relevance. Fifth, even if the Court were prepared to take judicial notice of information contained in a third-party review platform, the sheer number of reviews and lack of specificity of Plaintiff's request for notice raises concerns of relevance of the documents' information.

This Court finds that Exhibits F and G are not appropriate for judicial notice. Further, while Exhibits B, C, and H do not appear to reflect open-source websites, the websites depicted are maintained by third parties such as Staples and Office Depot. Accordingly, the Court **DENIES** Plaintiff's Requests for Judicial Notice of Exhibits B, C, F, G, and H.

## III.    EVIDENTIARY OBJECTIONS

The parties have filed separate statements of evidentiary objections. Defendant objects to exhibits attached to the Friedman's Declaration. (*See* Dkt. No. 69.) Plaintiff objects to statements made by Curtis Derr in his Declaration. (*See* Dkt. No. 77.)

The Court may "consider inadmissible evidence in deciding whether it is appropriate to certify a class." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 965 n.147 (C.D. Cal. 2015) ("Since a motion for class certification is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence . . . . At the class certification stage, the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." (internal

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

quotations omitted)); *accord Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, No. 11cv1057–GPB(RBB), 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012) ("Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence." (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (explaining that the class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials"))); *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial."). District courts may, however, "resolve any factual disputes necessary to determine whether" a plaintiff's claims meet the Rule 23 criteria. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (noting a factual dispute regarding commonality and holding that the court is "required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole"). As such, the Court **OVERRULES** the parties' objections for the limited purpose of this Motion for Class Certification.

## IV.   LEGAL STANDARD

### A. Motion to Strike Expert Report

Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony in federal courts. It provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (West 2011). The key inquiry in evaluating expert testimony centers on reliability. *See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 590 (1993). As

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

the Ninth Circuit recently reiterated, "[w]e are concerned not with the correctness of the expert's conclusions but the soundness of his methodology." *Estate of Barabin v. AstenJohnson Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal quotation marks and alterations omitted). Thus, it is incumbent upon a district court to "act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (internal quotation marks omitted). These same standards apply to all expert testimony, not just scientific testimony. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Importantly, the Rule 702 inquiry is flexible, and courts may exercise significant discretion. *Daubert*, 509 U.S. at 594; *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Finally, a proponent of expert testimony has the burden of proving that the proposed expert testimony is admissible under Rule 702, *Daubert* and its progeny. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## B. Motion for Class Certification

A Rule 23 class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). Certification is the process by which a named party may begin representing a class of individuals who are not named and do not otherwise participate in the litigation. Pursuant to Rule 23, a class may be certified only if four requirements are satisfied: (1) the class is so numerous that joinder would be impracticable—numerosity; (2) there are questions of law or fact that are common to the class as a whole—commonality; (3) the representative parties have claims or defenses typical of those of the class—typicality; and, (4) the representative parties will fairly and adequately protect the class's interests—adequacy. Fed. R. Civ. P. 23(a). Additionally, a class may be certified only if one of Rule 23(b)'s requirements is met.

The party seeking class certification bears the burden of establishing the requirements of Rules 23(a) and 23(b). *See Wal–Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [] Rule [23].") When ruling on a motion for certification, a court generally must accept as true the allegations in the complaint, especially when "the issues are plain enough from the pleadings to determine whether the interests of the absent

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Nevertheless, "sometimes it may be necessary for the court to probe behind the pleadings" when considering certification. *Id.* A court's analysis should be rigorous and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal–Mart*, 564 U.S. at 351.

## V.    DISCUSSION

In support of her motion for class certification, Plaintiff proffers the Declaration of William Buckley. (Dkt. No. 59-2.) Plaintiff relies on Buckley as an expert witness to testify that a conjoint analysis or discrete choice estimation could be used to isolate and determine the value of the SIF to the consumer. (Pl.'s Mot. at 10–11.) Given the importance of Buckley's testimony to Plaintiffs' showing of a method of calculating classwide damages, the Court will first discuss Defendants' motion to exclude Buckley as an expert witness. The Court will then consider Plaintiff's motion for class certification.

### A. Defendant's Motion to Strike William Buckley's Declaration

Defendant contends that the Court should exclude the declarations and testimony of William Buckley for three reasons: (1) Buckley is not qualified to offer an opinion on classwide damages; (2) Buckley has made no showing that methodologies exist for calculating classwide damages; and, (3) Buckley's opinions are not sound under *Daubert*. (Def.'s Mot. at 1–2.) The Court will separately discuss the arguments.

#### 1.  Buckley is Not Qualified to Offer His Opinion

Federal Rule of Evidence 702 prescribes the requirements for testimony by expert witnesses. The rule "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). It permits an expert to be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Moreover, the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas*, 42 F.3d at 1269.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

The Court is not persuaded that he is qualified to testify as an expert witness as to consumer behavior prediction and conjoint analysis. Buckley described his qualifications in his Declaration and Deposition testimony. He has an MBA in finance from UCLA Anderson Graduate School of Management, (Buckley's Decl. ¶ 5). In the last ten years, Buckley has worked in consulting and litigation support, quantitatively analyzing and opining on damages. (Buckley's Dep. 9:9–18.) He has been retained as an expert witness or principal analyst in over 200 cases, including cases involving financial analysis and forensic economics. (Buckley's Decl. ¶ 3; Buckley's Dep. 12:25–13:5.) These are impressive credentials. But an MBA and significant experience as an expert witness as to certain types of damages is insufficient to qualify as an expert witness as to other damages. Buckley must have expertise in the matters on which he will opine in this case—specifically, statistical methods and modeling for predicting consumer behavior, such as conjoint analyses.

Buckley has a "fairly strong statistical background" outside of consumer behavior; his "financial planning and analysis work . . . relies on forms of regression analysis or other kinds of predictive modeling . . . ." (Buckley's Dep. 11:23–12:5.) However, he has no background in consumer psychology, nor in statistical methods for predicting consumer behavior. (Buckley's Dep. 11:17–11:23.) He has no educational or professional background in survey design or sampling. (Buckley's Dep. 12:10–24.) Nor has he published peer-reviewed articles on discrete choice modeling, conjoint experiments or analysis, or survey design/sampling. (*Id.*) He has never conducted a conjoint study before, (Buckley's Dep. 33:7–8), and "[conjoint studies are] not typically part of what [his firm] work[s] with", (*Id.* at 33:9–12).

"[Buckley has] applied statistical modeling quite often in [his] work . . . . [However, he has not applied statistical modeling] in a consumer product sense." (Buckley's Dep. 36:16–24.) To this same effect, Buckley also explained that he has done multivariant regression analysis, which is similar to conjoint analysis. (Buckley's Dep. 35:14–16.) Yet when asked to explain how multivariant regression analysis differs from conjoint analysis, Buckley responded that "[the question is] beyond the scope of [his] expertise". (Buckley's Dep. 36:13–17). And with regard to the multivariant regression analysis, Buckley testified that "[he is] never hired to specifically provide the multivariant analysis. It would be very rare that that would be [his] job function." (Buckley's Dep. 36:16–24).

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

Buckley's deposition testimony leaves the Court convinced that he lacks sufficient expertise in the area of consumer behavior prediction generally, and in the performance or analysis of conjoint studies specifically to opine on the matter. The Court finds that Buckley is not qualified to testify as an expert on consumer behavior prediction and conjoint analysis.

### 2. Buckley Has Not Shown that Methodologies Exist for Calculating Classwide Damages

Defendant asserts that Buckley has failed to show that data exists to allow the Court to assess whether his proposed methodology of calculating classwide damages under CLRA is sufficiently reliable to pass muster under *Daubert*. Even if Buckley were qualified as an expert to offer testimony regarding consumer behavior prediction and conjoint analysis, the Court agrees that Buckley's suggested methodology is insufficient under *Daubert*.

Buckley explained in his Deposition that designing marketplace and conjoint surveys is outside of his expertise. (Buckley's Dep. 42:2–4.) Perhaps as a result, Buckley fails to show with any particularity the method by which damages calculation might be possible upon completion of such a study. With regard to his methodology, Buckley states that he would begin by identifying the number of Printers sold, as well as a list of the convoy of consumable products necessary for functionality, such as toner cartridges. (Buckley's Decl. ¶¶ 8, 12–14.) Next, Buckley would commission a survey to determine the premium paid by consumers for the Printers. Buckley's Decl. ¶¶ 10–13.) The Court does not doubt that Buckley has the capability to commission a report. However, the Court finds that precisely the description of the methodology of the survey, rather than the order of steps leading to the commissioning of a survey, are at issue under a *Daubert* showing of a reliable methodology for calculation of classwide damages.

Buckley has prepared, in a prior case, a damages model that could be applied on a classwide basis, which was accepted by the court in that case. (Buckley's Dep. 16:7–13.) However, that case involved an unfair competition claim; the Court finds no basis to infer that the same modeling is possible in this circumstance. Even stronger showings of methodology for calculation of classwide damages, made by experts qualified in conjoint analysis, have been found to be insufficient under *Daubert* by district courts in the Ninth

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

Circuit.[3]  Thus, the Court finds that Buckley fails to show that a methodology exists for calculating classwide damages.

### 3. Buckley's Methodology is Not Sound

At this early stage, the methodology Buckley has suggested relies on the commissioning of further experts to conduct the actual conjoint study.  (Buckley's Decl. ¶ 11.)  Even if the Court accepts his suggested methodology as sufficiently demonstrated, the Court is unconvinced that the methodology is sound.  When asked in his deposition what factors he could identify to determine whether a conjoint study was sound, Buckley could not answer with any specificity, stating: "[T]here would be some statistics developed with it that would give you confidence in the reliability of the model . . . . I'm not exactly sure what statistic they're going to produce that will give us that measure, but I'm sure it will be part of the report, and it would be their confidence in the model itself."  (Buckley's Dep. 37:18–38:15.)  When asked if he would do any independent analysis to determine whether the [conjoint] study [he was] provided with [by the experts he intends to contract] was, in fact, reliable?" Buckley responded that [he] wouldn't try to redesign the study necessarily."  (Buckley's Dep. 38:16–39:1.)

Buckley's responses regarding reliability of his methodology indicate a lack of soundness.  This Court finds Buckley's methodology, which primarily relies on the commissioning of other experts, to be insufficient under *Daubert*.  Accordingly, the Court **GRANTS** Defendant's Motion to Strike Buckley's Declaration.

### B. Plaintiff's Motion for Class Certification

As described above, Plaintiff seeks to certify one class and one subclass.  (Pl.'s Mot. at 2.)  A class may be certified only if the plaintiffs can satisfy the requirements of

---

[3] "Although the methodologies [the qualified expert] describes may very well be capable of calculating damages in this action, [the expert] has made no showing that this is the case. He does not identify any variables he intends to build into the models, nor does he identify any data presently in his possession to which the models can be applied. The court is thus left with only [the expert]'s assurance that he can build a model to calculate damages. Stated differently, his declaration is 'so incomplete as to be inadmissible as irrelevant.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014) (citations omitted).

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | | Date | September 1, 2016 |
|---|---|---|---|---|
| Title | **ANNE WOLF V. HEWLETT PACKARD COMPANY** | | | |

Rule 23(a) and 23(b).  Fed. R. Civ. P. 23.  Defendants contend certification is improper
for the following reasons: (1) Plaintiff has not established an appropriate class definition;
(2) Plaintiff has not met her burden of establishing through evidentiary proof that the
requirements of Rule 23(a) are met; (3) Any common questions of law and fact do not
predominate; (4) Certification is not the superior way to resolve the dispute; and, (5) No
nationwide class can be certified.  The Court will discuss each argument in turn.

### 1.    Class Definition

Defendant argues that the Court is bound to class definitions provided in the
complaint and, absent an amended complaint, should not consider certification beyond it.
*See Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009).  *See also Berlowitz v.
Nob Hill Masonic Mgmt., Inc.*, No. C–96–01241 MHP, 1996 WL 724776, at *2 (N.D.
Cal. Dec. 6, 1996) (rejecting plaintiff's attempt to certify a class different from that
alleged in the complaint, because the "court is bound by the class definition provided in
the complaint . . . and will not consider certification of the class beyond the definition
provided in the complaint unless plaintiffs choose to amend it"); *see also Ortiz v.
McNeil–PPC, Inc.*, Nos. 07cv678–MMA(CAB), 2009 WL 1322962, at *2 (S.D. Cal. May
8, 2009).  As explained above, the Court will consider the Plaintiff's class definition as
set out in her instant Motion.[4]

### a.    Ascertainability

HP contends that Plaintiff's class is not "ascertainable" and thus cannot be
certified.  (*See* Def.'s Opp'n at 8.)  Most courts addressing ascertainability describe the

---

[4] Defendant, citing *Costelo v. Chertoff*, argues that this Court should not consider certification beyond
the class definition provided in the operative complaint.  (Def.'s Opp'n at 8.)  This Court is unpersuaded
that consideration of the revised class definition in the Plaintiff's Motion is inappropriate.  The class
definition proposed in the Motion is narrower than the definition in the operative complaint, and the
Court finds no lack of diligence on the part of Plaintiff; thus the Court will consider the class definition
in the Motion.  *See Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-0964-GPC-DHB, 2013 WL
4774763, at *5 (S.D. Cal. Sept. 5, 2013) (Court considered a narrower, revised class definition not
asserted in the operative complaint.); *cf. Ortiz v. McNeil-PPC, Inc.*, No. 07CV678-MMA(CAB), 2009
WL 1322962, at *3 (S.D. Cal. May 8, 2009) (The court refused to consider a revised class definition
where Plaintiffs did not seek to amend or change their class definition until after the court had denied
their first motion for class certification.).

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | | Date | September 1, 2016 |
|---|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | | |

concept as an additional or implied requirement outside of Rule 23.  *See, e.g.*, *Doyle v. Chrysler Grp. LLC*, No. SACV 13–00620 JVS, 2014 WL 7690155, at *5 (C.D. Cal. Oct. 9, 2014) ("In addition to more precisely articulated provisions of Rule 23(a) and (b), there is the implied prerequisite that the class be sufficiently definite and ascertainable.") (citing *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089–90 (N.D. Cal. 2011)); *McCrary v. Elations Co., LLC*, No. EDCV 13–00242 JGB OP, 2014 WL 1779243, at *3 (C.D. Cal. Jan. 13, 2014) ("Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable.") (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012)).

"'Ascertainability is needed for properly enforcing the preclusive effect of final judgment.  The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss . . . . Indeed, courts of appeal have found class certification to be inappropriate where ascertaining class membership would require unmanageable individualized inquiry.'"  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693 PSG (RZX), 2015 WL 4776932, at *6 (C.D. Cal. May 27, 2015) (citations omitted).

In this Court's view, the Plaintiff's proposed Class and Subclass are readily ascertainable.  Courts in this District counsel that "[a]n ascertainable class exists if it can be identified 'by reference to objective criteria.'" *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13–CV–02468–CAS (MANx), 2014 WL 4627271, at *6 (C.D. Cal. Sept. 8, 2014) (quoting *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008)).  "In [the Ninth] Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify himself or herself as having a right to recover based on the description.'" *See McCrary*, 2014 WL, at *8 (quoting *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (citation and internal quotations omitted)).

The Class and Subclass descriptions as stated do not rely on a determination of Defendant's liability; rather the Parties and the Court can determine membership in both the Class and Subclass using the objective criteria that Plaintiff has suggested, "namely whether (i) persons within the United States (ii) purchased Defendants' P1102 Printers (iii) advertised containing the Smart Install Feature (in all packaging sizes and iterations),

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

(iv) on or after the date the Smart Install Feature was deactivated (v) for their own personal use (vi) between April 2014 and present." (Pl.'s Mot. at 19.) The characteristics set out by Plaintiff are a sequence of binary factors; thus, prospective plaintiffs should be able to determine whether each characteristic affirmatively or negatively applies to them with relative ease.

The Court agrees with Defendant that characteristic (v) regarding personal use requires an individualized inquiry into the purpose for which a given purchaser bought the Printer. Plaintiff, in an attempt to contest Defendant's position regarding unmanageability of the inquiry, asserts that "[h]aving class members self-identify is perfectly appropriate and accepted by courts." (Reply at 8 (citing *Morales v. Kraft Foods Group, Inc.*, 2015 WL 10786035, at *10–*13 (C.D. Cal. June 23, 2015).) This assertion is imprecise. In *Morales*, the court stated that "[t]he Ninth Circuit has not addressed whether self-identification by members in a consumer class action is sufficient to satisfy an ascertainability requirement." *Morales*, 2015 WL at *12. However, the court reasoned that self-identification by putative class members was reliable and appropriate in that case because: (1) absent self-identification a class proceeding would not be available, (2) a sworn statement, made under penalty of perjury, has some inherent reliability; and, (3) prevailing on the merits would require a common showing of proof to establish the underlying elements of the claim.[5] *Id.* at *13.

Other district courts have rejected self-identification. *See, e.g.*, *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 450 (S.D. Cal. 2014) (finding a proposed class unascertainable because self-identification by class members would be unreliable where

---

[5] Other district courts have also rejected the reasoning in *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012), and *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013), because it would, in effect, preclude the low cost consumer class action. *See, e.g.*, *McCrary*, 2014 WL at 7–8 ("*Carrera* eviscerates the low purchase price consumer class actions in the Third Circuit" by disallowing certification "in any case where the consumer does not have a verifiable record of purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers"); *accord Astiana v. Kashi Co.*, 291 F.R.D. 493, 498 (S.D. Cal. 2013) (class of consumers challenging alleged misrepresentations that consumer products were "all natural" or contained "nothing artificial" was ascertainable notwithstanding that the consumers did not have records proving purchase).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

it was unlikely that the average purchaser would retain receipts or remember their purchase of particular make-up products).

Keeping with Rule 23's spirit of promoting efficiency and avoiding the filing of thousands of individual cases, this Court finds self-identification appropriate in this case. Putative class members are far more likely to remember (and save a receipt of) their purchase of a Printer than of make-up, because a Printer is significantly more expensive than make-up. More importantly, the Court is persuaded that self-identification would be reliable, as in *Morales*, because (1) putative class members' declarations under oath would have sufficient, inherent reliability, and (2) common, classwide reliance and damages would first need to be proven by Plaintiff. As such, the inquiry necessary with regard to characteristic (v) is manageable here.

## 2. Rule 23(a)

### a. Numerosity

This requirement is met if the class is so large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a). Here, the class Plaintiff seeks to certify is comprised of over 200,000 customers. (Pl.'s Mot. at 21.) Defendant argues that Plaintiff has not shown that the class of consumers is numerous because Derr testified that a majority of the 200,000 Printers were sold to business users, rather than consumers. (Derr's Dep. 67:25–68:17; Derr's Decl. ¶ 9.)

However, Plaintiffs are not required "to state the exact number and identity of every class member because to do so would frustrate the purpose of class actions when recoveries may be numerous but small." *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 34 (S.D. Cal. 1975) (citing *Herbst v. Able*, 278 F. Supp. 664 (S.D.N.Y. 1967)). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982).

Defendant notes that a majority of the 200,000 Printers were sold to businesses, (Derr's Dep. 67:25–68:17; Derr's Decl. ¶ 9), and the SIF was only advertised to be compatible with computers using the Windows operating system, (Def.'s Opp'n at 16).

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

Further, Defendant argues that only those users who purchased a Printer at a brick and mortar store can qualify as class members, because online purchasers may not have seen the advertising on the Printers' cartons.  (Def.'s Opp'n at 16.)  Mindful of these factors, the Court finds that general knowledge and common sense still indicate that a class of purely consumers could still number in the tens of thousands.  *Cf. In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("[T]he class' numerosity is readily apparent given there are thousands of possible members.").

With regard to the California consumer Subclass, Derr stated that "there was no reason to believe that the distribution of sales of class products across the country would differ in any significant way from that of an extrapolation of the proportion of each state's population.  (Derr's Dep. 141:13–143:11.)[6] As a result, the number of Printers sold in California could number around 26,000.  Again, mindful of the factors raised by Defendant, the Court finds that the Subclass satisfies the numerosity requirement.[7]

### b.    Commonality

The commonality requirement is met if there are "questions of law and fact common to the class." Fed. R. Civ. P. 23(a). "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008); *see also Wal–Mart*, 564 U.S. at 350 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). *Wal–Mart* recently clarified that "[c]ommonality requires the plaintiff to demonstrate the class members 'have suffered the same injury.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The class members here have all suffered the same injury—they purchased a Printer advertised to have the SIF installed, although in actuality the SIF had been disabled.

---

[6] California makes up around 12% of the population of the United States; thus as many as 26,000 of the over 200,000 Printers sold nationwide may have been sold to purchasers who reside in California.

[7] Courts have found the numerosity requirement to be satisfied when the class comprises 40 or more members.  *See Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y 1998).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

Defendant argues that Plaintiff has failed to show that "each potential class member [has] both an actual injury and . . . that the injury was caused by the challenged practice. (Def.'s Opp'n at 15 (citing *Berger v. Home Depot USA*, 741 F.3d 1061, 1069 (9th Cir. 2014)).) Here, the circumstances of purchase of particular class members indeed may vary. Purchases may have occurred online or in-store, and consumers may or may not have perceived and relied on the advertising. But the core factual and legal issues here are shared among the members. Specifically, the members share the factual question of whether the Defendant advertised the SIF on printers that in fact had the SIF disabled prior to its packaging and sale. Further, the court's determination on the legal question of whether Defendant's alleged misrepresentation qualifies as false advertising within the scope of the CLRA could resolve a classwide contention/claim to damages. The commonality requirement is met for both the putative Class and Subclass.

### c.    Typicality

To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; [but] they need not be substantially identical." *Flo & Eddie*, 2015 WL at *9 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

As a threshold matter, Defendant maintains that Plaintiff's claim is not typical of putative class members, because Plaintiff's "Declaration is devoid of any explanation as to the purpose for which Plaintiff purchased the printer." While the Plaintiff counters that "[Defendant] is grasping at straws to avoid accountability", (Reply at 9), the Court notes that "sometimes it may be necessary for the court to probe behind the pleadings" when considering certification." *Falcon*, 457 U.S. at 160. CLRA claims brought by individuals who acquired a product for business use rightfully fail and can lead to the denial of certification of a CLRA class. *See, e.g., Ewert v. eBay, Inc.,* No. C-07-02198 RMW, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | | Date | September 1, 2016 |
|---|---|---|---|---|
| Title | **ANNE WOLF V. HEWLETT PACKARD COMPANY** | | | |

A closer reading of Plaintiff's deposition testimony, confirms that she intended to use the P1102w printer for her home Internet sales business, including for printing mailing labels.  (Dkt. No. 60-1 ("Wolf's Dep.") at 27:23–28:7.)  However, Plaintiff further indicated that she had intended to use the Printer not only for online sales, but also for printing her son's schoolwork, coupons, tickets, and worksheets for her toddler.  (*See* Wolf's Dep. 28:8–24.)  Such printing constitutes personal use.[8]

Wolf's claim here is that HP misrepresented its Printers to have an enabled SIF, and that she relied on this misrepresentation in choosing this Printer over other printers at the time of her purchase.  (Wolf's Decl. ¶¶ 4–5.)  The absent, putative class members' claims here would arise from the same event, practice, or course of conduct: mislabeling (or delayed repackaging) of Printers that had the SIF disabled by default.  Both Plaintiff and the putative class members would claim the harm of making a purchase in view of untrue advertising related to the SIF, which had been disabled by HP.  Both Plaintiff and putative class members would claim economic injury and call for a refund of the value difference between a printer that has the SIF enabled, and the Printer the consumers actually purchased.  And California has an objective test for consumer protection statutes, rather than one turning on the "claimant's particular state of mind."  *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 539 (N.D. Cal. 2012).  Thus, the fact that consumers may have been affected by the alleged misrepresentation in unique or different ways is not central to the typicality analysis.  *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502–03 (S.D. Cal. 2013).  Here, the Plaintiff's and putative class members' claims are co-extensive.  Accordingly, the Court finds that Plaintiff's claims are typical of both Class 1 and Subclass 1 putative class members' claims.

### d.    Adequacy

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). Representation is adequate when the class representative and counsel do not have any conflicts of interest with other class members, and the representative plaintiff and counsel

---

[8] In *Mazza v. American Honda Motor Co.*, the court agreed that the CLRA clarification as to personal, family, or household purposes is intended solely to exclude dealer/wholesale purchases.  254 F.R.D. 610, 617 (C.D. Cal. 2008) (vacated on other grounds by *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01221 BRO (GJSx)** | Date | September 1, 2016 |
|---|---|---|---|
| Title | **ANNE WOLF V. HEWLETT PACKARD COMPANY** | | |

will prosecute the action vigorously on behalf of the class. *Flo & Eddie,* 2015 WL at *10 (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)).

The Court has no evidence that Plaintiff and her counsel would fail to prosecute the action vigorously on behalf of the class. Further, no conflicts of interest are apparent between Plaintiff and other class members. The adequacy requirement is satisfied for both putative Class and Subclass.

    **3.    Rule 23(b)**

        **a.    Common Questions Predominate**

Although Buckley's Declaration in support of the existence of a classwide measure of damages is stricken, Plaintiff's motion for class certification does not fail under Rule 23(b). Rule 23(b) still can be satisfied in one of three ways. In cases like this one, where Plaintiffs assert individualized monetary claims, certification is properly considered under Rule 23(b)(3). *Wal–Mart*, 564 U.S. at 361. To certify a class under Rule 23(b)(3), a court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

The predominance test gauges "whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . [and] focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.'" *Flo & Eddie,* 2015 WL at *10 (citing *Hanlon*, 150 F.3d at 1022). "[P]redominance does not require plaintiffs to prove that every element of a claim is subject to class wide proof: they need only show that common questions predominate over questions affecting only individual class members." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013).

"For purposes of class certification, it is sufficient that the alleged material misstatement and omission was part of a common advertising scheme to which the entire class was exposed...."). *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 486 (S.D. Cal.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01221 BRO (GJSx)** | Date | September 1, 2016 |
|----------|---------------------------|------|-------------------|
| Title | **ANNE WOLF V. HEWLETT PACKARD COMPANY** | | |

2013) (quoting *O'Shea*, 2011 WL 4352458 at \*11)).  [C]ommon issues predominate when plaintiffs are exposed to common set of representations about a product.  *Waller*, 295 F.R.D. at 486 (citing *In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011)).

    The consumer-status of each purchaser remains a key question affecting the appropriateness of each putative class member's CLRA claim.  In this case, the characteristics suggested by Plaintiff for ascertaining the class operate as easily discernible binaries.  Characteristic (v), regarding whether the purchase was made for personal use, complicates the determination of the identity of class members, because the purpose of use requires an individualized evaluation of each putative class member's intent.  In *Ewert*, 2010 WL at \*9, the court denied certification of a class in a CLRA case in part because there was "little doubt that many non-consumers [were] included as class members."  Thus, the Court finds that the consumer-status under the CLRA of putative class members remains a dominant, individualized question in this case.

    However, this Court views the materiality of the alleged misrepresentation as the predominant, common question affecting this suit.  The Plaintiff alleges that she and the putative class members were exposed to a material misstatement as part of a common advertising scheme.  The Court agrees that because the alleged misrepresentation at issue was visible on the carton of every Printer sold after HP had decided to disable the SIF, but before HP had exhausted its store of boxes that it decided not to scrap, the misstatement was part of a common advertising scheme.  A single adjudication of the materiality of the advertisement would resolve a significant aspect of each and every putative class member's claim.  The common question of whether a reasonable consumer would consider the advertisement of the SIF material in making his or her decision to purchase a printer remains, and predominates.

  **b.**   **Reliance**

    HP argues that individual issues predominate because of purchasers' varying perceptions and understanding the SIF labeling on the Printer cartons.  (Def.'s Opp'n at 20.)  However, individual reliance need not be shown here.  The CLRA allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material.  *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1103 (C.D. Cal. 2015)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

(citations omitted).  A predominant common question of whether Defendant's advertising communicated a persistent message that a reasonable person would have considered the Defendant's representation material remains here.

Defendant further asserts that advertising of the SIF may have varied among online retailers.  (Def.'s Opp'n at 20.)  The Court is persuaded that the potential inconsistencies between third-party seller websites raise significant questions about online purchasers' reliance on the advertising statements in question.  Unlike individuals who purchased their Printer at a brick-and-mortar sales location, online purchasers were not necessarily exposed to the actual Printer carton bearing the advertisement at the time of purchase.  Accordingly, as discussed below, the Court narrows the class description to encompass only those putative class members who purchased a Printer at a brick-and-mortar, physical retail location.

### c.    Actual Injury and Damages

As explained above, both Plaintiff and putative class member would likely claim economic injury and call for a refund of the value difference between a Printer that has the SIF enabled, and the Printer the consumers actually purchased.  Mr. Buckley is unqualified to offer an opinion as to how injuries and resulting damages might be determined on a classwide basis.  However, the value that a consumer assigns to the SIF need not be determined individually; again, California employs an objective test for consumer protection statutes, rather than one turning on the "claimant's particular state of mind." *See Ries*, 287 F.R.D. at 539. Thus, the fact that consumers may have been affected by the alleged misrepresentation in unique or different ways is not a predominating issue here.

Defendant argues that individual issues predominate as to damages.  (Def.'s Opp'n at 22.)  Rule 23(b)(3) is satisfied only if plaintiffs can show that "damages are capable of measurement on a classwide basis."  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1021–23 (C.D. Cal. 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)).  Yet the Ninth Circuit reaffirmed the proposition that differences in damage calculations do not defeat class certification after *Comcast* in *Jimenez v. Allstate Insurance Co.,* 765 F.3d 1161, 1167 (9th Cir. 2014).  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015).

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | | Date | September 1, 2016 |
|---|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | | |

In her Motion, Plaintiff argues that a conjoint analysis may be used to show classwide damages to establish her satisfaction of 23(b). (SAC at 10–11 (citing to Buckley's Decl. at 8–14).) As discussed above, Buckley lacks the qualifications to assert that a methodology exists to calculate classwide damages based on a conjoint analysis and the Court grants Defendants' motion to exclude his Declaration. As such, Plaintiffs have failed to show that damages are capable of measurement on a classwide basis.

However, "damage calculations alone cannot defeat certification." *Yokohama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). The Court "need not make individual determinations regarding entitlement to restitution. Instead, restitution is available on a classwide basis once the class representative makes the threshold showing of liability" under the CLRA. *See Pulaski*, 802 F.3d at 986. Thus, Plaintiff's failure to show a method of calculating classwide damages is possible does not defeat her Motion.[9]

### d.    Superiority

Rule 23(b)(3) also requires courts to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In the superiority analysis, courts consider the following non-exhaustive factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

These factors clearly favor classwide resolution of Plaintiff's CLRA claim. In a consumer class action of this type involving the purchase of a relatively inexpensive product, injured consumers are unlikely to pursue their claims on an individual basis. The expense that would fall on individual class members if each class member had to provide a statistical analysis and expert testimony on the value of a Printer with the SIF compared to a printer without such an installation feature is significant. A common determination of the value of the SIF would reduce litigation costs and be more efficient.

---

[9] This order does not preclude Plaintiff from engaging a qualified expert on conjoint analysis to establish classwide damages.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

At the same time, the number of potentially injured individuals in the putative Class could range in the tens of thousands here.  The Subclass, similarly, may range in the thousands.  The sheer number of putative class and subclass members, and the relatively low cost of the Printer, support a class action to determine whether a remedy for the alleged widespread injury is appropriate.

Further, the class members' interest in individually controlling prosecution of separate actions is insignificant: A damages remedy stemming from a class suit on the basis of the alleged misrepresentation would be adequate to most, if not all, putative class members.  Additionally, the primary difficulty likely lies in the administration of the initial surveys to determine class membership.  This challenge is manageable and should be undertaken in light of the significant common issues that exist and predominate over individual issues.  Finally, this forum is appropriate for the resolution of such claims.

### 4.    No Nationwide Class Can Be Certified

The Ninth Circuit has held that applying the CLRA to out-of-state residents by certifying a nationwide class can raise constitutional concerns.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place.").

"Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member."  *Mazza*, 666 F.3d at 589 (citations omitted).  Where a defendant is headquartered in California, courts in the District have already held that application of California law poses no constitutional concerns.  *See Forcellati v. Hylands, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).  "[T]he burden is on Defendants to defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law under the applicable choice-of-law analysis.  *See Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 731 (Cal. 1972).

Defendant must make this showing under California's three-step governmental interest test: (a) Defendant must show that the relevant laws of the affected jurisdictions

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

are materially different; (b) Defendant must show that the foreign jurisdictions have an interest in the application of [their] own law under the circumstances of the particular case such that a true conflict exists; and, (c) if Defendant can show that there is a true conflict, it must engage in a comparative impairment analysis and demonstrate that the foreign states' interests in this matter are stronger than California's such that the foreign states would be more impaired if their laws were not applied. *Forcellati*, 2014 WL at *2 (internal quotation marks omitted) (citing *Mazza*, 666 F.3d at 590).

Here, Plaintiff alleges that Defendant HP is headquartered and maintains its principal place of business in California. (SAC ¶ 2.) The burden of showing that certifying a nationwide class based on the CLRA is inappropriate lies with the Defendant. Defendant asserts that "HP can do so readily, under the controlling authority of *Mazza*." (Def.'s Opp'n at 26–27). For the following reasons, the Court finds that Defendant indeed has met its burden.

In *Mazza*, the Court explained that the defendant had met its burden of demonstrating that the differences between state consumer protection statutes were material. *Mazza*, 666 F.3d at 591. Specifically, the court was persuaded that because other states' consumer protection statutes required a plaintiff to demonstrate scienter and reliance, application of the CLRA in place of other states' consumer protection statutes was improper. *Id.* The court found these differences to be material because a scienter and/or reliance requirement could "spell the difference between the success and failure of a [consumer protection] claim." *Id.*

The same reasoning applies here. Defendant's Printers were purchased by consumers both in California and in other states. Defendant has made a detailed, comprehensive showing of the differences in the elements of varying state consumer protection statutes. (*See* Def.'s Opp'n, Ex. D.) As in *Mazza*, several other state consumer protection statutes require reliance and/or scienter. (*See id.*) These differences are material because the success of a consumer protection claim with regard to Defendant's advertising could similarly depend on the determination of these particular elements.

In sum, with regard to the three-step governmental interest test, Defendant has shown that (a) the relevant consumer protection laws of the affected jurisdictions

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01221 BRO (GJSx) | Date | September 1, 2016 |
|---|---|---|---|
| Title | ANNE WOLF V. HEWLETT PACKARD COMPANY | | |

materially differ.  The Court agrees with Defendant that the *Mazza* court's analyses on (b) the interests of foreign jurisdictions, and (c) which state interest is most impaired, apply equally here.  *See Mazza*, 666 F.3d at 591–594.  As such, the certification of Plaintiff's proposed nationwide class is inappropriate.

### 5.     Revised Class Definition

In view of *Mazza* and the questions regarding online purchasers' reliance on the advertisement in question, the Court exercises its discretion to revise the class definition. In particular, the Court (1) declines to certify the proposed nationwide class and (2) limits the California subclass to those consumers who purchased their Printer at a physical, retail location in California.  The certified class description shall read as follows:

- **Class 1:**  All consumers, who, between in or about April 2014, and the present, purchased one or more HP Laserjet P1102 printers at a physical, retail location in the state of California, and whose printer was advertised to include the HP Smart Install feature, but was in fact subject to HP's disablement of the Smart Install Feature.

## VI.    CONCLUSION

For the reasons discussed above, Defendant's motion to strike is **GRANTED** and Plaintiff's motion for class certification is **GRANTED in part**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ah |