Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANNE WOLF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | **Case No.: 5:15-cv-01221-TJH-GJS** |
| Plaintiff, | **PLAINTIF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | **Hon.  Terry J. Hatter** **Date:  November 5, 2018** **Time:  10:00 a.m.** **Place: Courtroom 9B** |
| **HEWLETT PACKARD COMPANY,** | **350 West 1st Street,** **Los Angeles, CA 90012** |
| Defendant. | |

Case No. 34-2016-00190874

**MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................1

II. STATEMENT OF FACTS ......................................................................4

    A. Attorneys' Fees Under The Settlement Agreement .......................4

    B. Summary of Fees Incurred ..............................................................6

III. LEGAL ARGUMENT ..........................................................................7

    A. Legal Standard................................................................................7

    B. The Requested Fee is Reasonable, Fair and justified Under the
       Lodestar Method ...........................................................................11

       1. Class Counsels' lodestar is reasonable ....................................12

       2. Class Counsels' hourly rates are reasonable ...........................14

       3. Class Counsel have obtained excellent results for the Class in
          comparison to awards made in similar cases .......................16

    C. The risks of litigation support the requested fees .........................20

    D. The Skill Required and Quality of Work Performed Support the
       Requested Fees ..............................................................................21

    E. Class Counsels' Undertaking of this Action on a Contingency-Fee
       Basis Supports the Requested Fees ..............................................22

    F. The Requested Costs Are Fair And Reasonable............................23

    G. Class Representatives' Application For Incentive Awards...........24

IV. CONCLUSION....................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Abogados v. AT&T*, 223 F.3d 932 (9th Cir.2000) ........................................................... 7

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) ...... 25

*Blum v. Stevenson*, 465 U.S. 886 (1994) ................................................................. 9, 14

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006) ......................... 8

*Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 Fed.Appx. 368 (9th Cir. 2013) .......... 8

*Conservatorship of Whitley*, 50 Cal. 4th 1206 (2010) .................................................. 8

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) .............. 14

*Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) ........................................................................................................ 13

*Eisen v. Porsche Cars North America, Inc.*, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ................................................................................................................. 10, 19

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ....................... 11

*Flannery v. California Highway Patrol,* 61 Cal.App.4th 629 (1998) ............................. 8

*Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (2004) .......................................... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 3, 11

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ......................................................... 9

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) .......................................... 15

*In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) ...................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011) .......... 7, 8, 12

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D.Mich.2003) ....................... 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F.Supp.2d 320 (D.Me.2005) ............................................................................................................ 18

*In re Consumer Privacy Cases*, 175 Cal.App.4th 545 (2009) ....................................... 8

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............. 24

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) ................. 24

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 (D. Me. April 13, 2011) .................................................................................................. 18

*In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...... 21, 22

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. Feb. 27, 2015) 25

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395 (D.Mass.2008) ............. 18

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) .............................. 25

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th  Cir. 1994) . 22

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .................................. 11

*Kulesa v. PC Cleaner, Inc.*, C.D. 2014 WL 12581770 (C.D. Cal. Aug. 26, 2014) ..... 20

*Lilly v. Jamba Juice Company,* 2015 WL 2062858 (N.D. Cal. May 1, 2015) ............. 10

*Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. March 13, 2010) .............. 16

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ............................................................................................................................ 10

*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Cal. 2010) ........... 19

*POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal 2008) ...... 15

*Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311 (1983) .................................................... 7, 8

*Randall May Intern., Inc. v. DEG Music Products, Inc.*, 2013 WL 1344915 (C.D. Cal. April 2, 2013) ............................................................................................................... 10

*Roberts v. Electrolux Home Products, Inc.*, 2014 WL 4568632 (C.D. Cal. Sept 11, 2014) ............................................................................................................................ 11

*Sadowska v. Volkswagen Group of America, Inc.*, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ...................................................................................................................... 11

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .................................................................... 7, 9

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) .................................................................... 14

*Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ........................ 20

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................... 9

iii

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

*Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167 (W.D.La.1997) ...........................18

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996).........................................................9, 11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .......................7, 21, 22, 23

*Winans v. Emeritus Corporation*, 2016 WL 107574 (C.D. Cal. Jan. 11, 2016) ...........8

**Statutes**

California Code of Civil Procedure § 1021.5 .......................................................2, 7, 8

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ..............2, 7

Texas Deceptive Trade Practices Act, Texas Business and Commerce Code, § 17.50
    *et seq* ........................................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................2, 7, 9

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Plaintiffs move the Court for an award of attorneys' fees, costs and incentive payment as part of this preliminarily approved class action settlement (see Dkt. No. 120) between Plaintiffs Anne Wolf, Anthony Fehrenbach, Robin Sergi, and Carlos Romero (collectively "Plaintiffs") and Defendant, HP Inc., formerly known as Hewlett-Packard Company ("HP" or "Defendant").[1]   The Settlement Agreement provides for a substantial financial benefit of $20 per Class Printer claimed by Class Members, which is a refund of over 15% off the purchase price.[2]  There were 8,203 Class Printers claimed by Class Members with valid claims, which represents a take rate of approximately 15.4%, a much higher take rate than average in a false advertising class action.  This outstanding result for the Class did not come easy.   Plaintiffs fought through three years of litigation, which included half a dozen motions on the pleadings, four separate class actions, review of roughly 100,000 pages of documents, three hired experts, depositions on both sides, a class certification motion which was granted in favor of Plaintiffs, a motion for class notice approval with the submission of class certification notice to the class, at considerable expense to class counsel, three mediation sessions, preliminary approval, settlement notice, overseeing administration, and now final approval of the settlement.

Each Class Member who submits a valid claim form will receive a check for $20 per Class Printer that they indicate in their Claim that they purchased, subject to verification to check for errors.  The agreement also provides that Defendant stipulated for purposes of settlement that Plaintiffs were the prevailing

---

[1] Collectively referred to as the "Parties."

[2] For reasons that are explained in Plaintiffs' contemporaneously-filed Motion for Final Approval, this result may actually be better than what the Class Members would receive if Plaintiffs had gone to trial and prevailed at judgment.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

parties, and were entitled to reasonable attorney's fees and costs, in an amount that was not subject to clear sailing, but which is subject to approval by The Court.[3]   Defendant will <u>separately</u> pay all of the following: (1) all settlement administration costs to KCC; (2) reasonable attorney's fees paid separately from the Class settlement fund; (3) reasonable litigation costs; and (4) incentive awards to the Named Plaintiffs. *Id.*  Again, these fees and expenses will *not* be paid from Class Member funds, and were not in an amount agreed upon through a clear sailing provision by the parties.  The Parties agreed that this was the most ethical and fair way of determining what fees should be awarded for Plaintiffs' Counsels' efforts in adjudicating this case and achieving this outstanding result.

On March 23, 2018, the Court granted preliminary approval of the Settlement and its terms enumerated above, observing, that the Settlement appeared reasonable and disclosed no grounds to doubt its fairness. Dkt. No. 120. Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement."  Fed. R. Civ. P. 23.  The fees requested herein, as a matter of binding precedent, are subject to state law, specifically the attorneys' fees shifting provisions under California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), Texas Deceptive Trade Practices Act, Texas Business and Commerce Code, § 17.50 *et seq* ("DTPA"), and California Code of Civil Procedure § 1021.5.  Under all of these laws, the analysis is straightforward for prevailing parties who achieve great results for Class Members through reasonable and necessary litigation efforts.

---

[3] Defendant cannot and will not challenge that there has been a significant public benefit by Plaintiffs, or that Plaintiffs are entitled to reasonable attorney's fees and costs; however, Defendant reserves the right to challenge the reasonableness of the fees requested.  Because no dollar figure has been agreed upon by the Parties, there is no concern about collusion, and therefore the heightened test normally required by Courts in class action settlements need not be applied.

As noted by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which was approved by this Court (Dkt. No. 68), the Settlement Agreement in this action resulted from extensive arm's length negotiations, including a full-day mediation session before Hon. Judge Louis M. Meisinger (Ret.).  Friedman Decl ¶ 6.  The arm's length negotiations, especially those before Judge Louis M. Meisinger (Ret.), serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is fully supported by the "lodestar" approach, which is the preferred approach according to the Ninth Circuit in fee shifting class actions such as this.  The $1,157,352.00 in attorneys' fees sought equates to the straight lodestar of Class Counsel combined as to the four actions which they are litigating and which are consolidated under this Settlement, with no multiplier, and after all potentially duplicative hours have been excluded.[4]  The hourly rates sought for Class Counsel have been approved by numerous courts in the past in other Class Action settlements handled by undersigned counsel.  Class Counsel have incurred a combined total of 2,015.1 hours litigating this action for a combined lodestar of $1,157,352.00.  Class Counsel have also expended $98,428.40 in reasonable litigation costs to date, which include payment for multiple mediations, payments to expert witnesses, filing fees and service expenses in four cases, and the cost of class certification due process notice to the class (nearly $60,000), among others.

---

[4] Even though requesting a multiplier is permissible, and even thought the results of this case under the circumstances would support a multiplier.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

Through this fee brief, which Defendant has the option of opposing,[5] Plaintiffs seek Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, to be paid to the Claims Administrator; (2) attorneys' fees in the amount of $1,157,352.00; and (3) litigation costs in an amount of $98,428.40. As more thoroughly stated herein and as detailed in the supporting declaration filed herewith, these sums are fair and reasonable as they are fully supported by the loadstar methodology, do not impact the recovery of the Class Members in any way, were incurred across four separate lawsuits, one of which was certified as a class action under Rule 23, and were not specifically negotiated with Defendant, removing any and all concern about potential collusion under the *Bluetooth* factors. Friedman Decl. ¶¶ 16-46.

## II.  <u>STATEMENT OF FACTS</u>

Plaintiffs extensively set forth the facts underlying the terms of the Settlement and the procedural history of the case in the contemporaneously-filed Motion for Final Approval, and incorporate these facts by reference. A few additional points are worth mentioning.

### A. Attorneys' Fees Under The Settlement Agreement

In class action settlements, it is rare for the parties to leave attorneys' fees open ended. The Parties did so here for several reasons. First, § 5.01 of the Settlement Agreement specifically states that any amount that a Class Member will receive under the agreement will not be impacted in any way by an award of attorneys' fees and costs to Class Counsel:

> <u>Total Payment/Amount Paid Per Approved Claim.</u>  HP shall pay twenty dollars ($20.00) to Qualified Class Members for each Class Printer purchased by the Qualified Class Member, via a claims-made settlement, to resolve the Actions and obtain a release of all

---

[5] Defendant cannot challenge Plaintiffs' counsels' right to request fees as the prevailing party, or challenge the strength of the settlement for the Class, but can challenge the reasonableness of the fees incurred.

Released Claims in favor of Defendant and the Released Parties. There shall be no cap on the total number of claims accepted.  HP will also agree to separately pay Settlement Costs, Administration Costs and reasonable Attorneys' Fees, in additional to the amounts to be paid to Qualified Class Members under Section XI of the Agreement.  Consequently, the amount of money that each Qualified Class Member receives will not be affected at all by the payment of Attorney's fees or any Costs.

The amount of recovery for Class Members was negotiated in mediation with Judge Meisinger in full before the parties even addressed attorney's fees and costs at all.

Second, § 6.01 of the Settlement Agreement states as follows:

<u>Attorneys' Fees and Costs</u>.  Class Counsel will move the Court for an award of attorneys' fees and expenses to be paid by HP, completely separate and apart from the compensation to be paid by HP to the class.  The Court has made no finding on the issue of Defendant's liability on the merits, and Defendant denies any such liability under any theory.  Pursuant to Section XVIII below, this settlement shall not be deemed an admission of liability on the part of Defendant for any purpose.  However, for the limited purpose of the Court's consideration of Plaintiffs' counsel's application for attorneys' fees and costs, Defendant will agree that Plaintiffs are the "prevailing parties" under applicable state law, as a result of the class settlement reached herein.  Defendant reserves all rights to challenge the amounts of such fees and costs to be awarded by the Court, including by way of opposition to Plaintiffs' motion for an award of attorney's fees and costs.

Accordingly, by agreement of the Parties, Defendant agrees that Plaintiffs will be awarded reasonable fees and costs, and that for purposes of this Motion, Plaintiffs are the prevailing Parties.  The Settlement at issue is on behalf of approximately 50,000 Class Members, and there is no dispute that this case was conferred a significant benefit on a substantial number of people and that the subject matter of the action implicated the public interest.  With these issues in mind, Plaintiffs turn to the appropriate test for determining reasonable fees in a case of this nature.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

## B. Summary of Fees Incurred

This action was originally filed nearly three and a half years ago. Since that time, Plaintiffs' counsel have expended thousands of attorneys' hours in ensuring that the Class Members would recover meaningful relief. These hours were reasonable and necessary and include but are not limited to the following:

- Researching the facts of the case and preparing the initial pleadings;
- Numerous drafted amendments to the complaints;
- Oppositions to motions to dismiss and motions for judgment on the pleadings;
- Written discovery, including the review of approximately 100,000 pages of documentation;
- The taking and defending of several depositions;
- Class certification and damages expert outreach and management;
- Research and preparation of class certification;
- Numerous court appearances;
- Day to day case management;
- The exchange of over 5,000 emails between Plaintiff's counsel, Defense counsel, experts, witnesses, third party retailers, clients, claims administrators, The Court, and others;
- Efforts involved in the filing of three additional related class action lawsuits aimed at expanding the class definition (a successful effort), and management of these four case dockets;
- Coordinating and overseeing a certification class notice plan, preparing and filing a motion for class notice, and paying nearly $60,000 in expenses out of pocket to ensure due process for the Class was satisfied;
- Investigations, expenses and other preparations for three mediation sessions;
- Drafting and negotiating a settlement agreement, class notice and preliminary approval papers;
- Managing subpoenas of over a dozen third parties in possession of data necessary to assess damages and give notice to class members, including meet and confer efforts, document and data review, preparations of motions to compel and court appearances;

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

- Overseeing class administration efforts, including dozens of emails and phone calls with Class Members, review and approval of notice documentation, and discussions with Defense counsel and the administrator; and
- The drafting of Final Approval papers.

This list represents a very broad overview of the history of the major projects in the case and the steps undertaken by Plaintiffs' counsel to achieve the favorable results for the Class.  None of these items are unnecessary, and in fact, every one of these items contributed to the overall success of this litigation.

## III.  <u>LEGAL ARGUMENT</u>

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Because California law governed the claim here, it also governs the award of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.2011).  Under California law, "the award of attorney fees is proper...if (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 317-18 (1983); *see also Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977).

California Code of Civil Procedure § 1021.5 applies to the request for attorney's fees in federal court actions brought under substantive California state law, including CLRA and UCL claims.[6] *Abogados v. AT&T*, 223 F.3d 932, 934

---

[6] Plaintiffs can request reasonable attorney's fees and costs of suit in addition to any recovery, pursuant to California Code of Civil Procedure.  Under Cal. C. Civ. Proc. § 1021.5, a plaintiff may recover attorneys' fees if: (1) the lawsuit "has

(9th Cir.2000); *Graham v. DaimlerChrysler Corp*., 34 Cal.4th 553, 560–561 (2004) (awarding fees in national class action settlement under § 1021.5); *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 551 (2009) (same).  Fee awards granted pursuant to § 1021.5 must be calculated using a lodestar analysis. *Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 321–22 (1983); *Flannery v. California Highway Patrol,* 61 Cal.App.4th 629, 640 (1998); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 Fed.Appx. 368 (9th Cir. 2013);[7] *Winans v. Emeritus Corporation*, 2016 WL 107574 (C.D. Cal. Jan. 11, 2016); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.2011); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006).[8]

The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *In re Consumer Privacy*

---

resulted in the enforcement of an important right affecting the public interest"; (2) "a significant benefit" is "conferred on the general public or a large class of persons"; (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate"; and (4) the fees "should not in the interest of justice be paid out of the recovery, if any." *See Conservatorship of Whitley*, 50 Cal. 4th 1206, 1211 (2010) ("[T]he purpose of section 1021.5 is not to compensate with attorney fees only those litigants who have altruistic or lofty motives, but rather all litigants and attorneys who step forward to engage in public interest litigation when there are insufficient financial incentives to justify the litigation in economic terms.").  This case is a prototypical example of a case in the public interest where there are not significant financial incentives to justify the litigation in economic terms.

[7] Court abused discretion by computing fees using percentage of the fund method as opposed to the lodestar method in a fee shifting case under California law.

[8] In *Colgan*, after the entry of judgment, plaintiffs filed a motion to recover their attorney fees and costs as the <u>prevailing parties under the CLRA</u> (Civil Code § 1780, subd. (d)) and under the private attorney general provisions of Code of Civil Procedure section 1021.5. The trial court awarded (separate from the class recovery) attorney fees in the total amount of $5,713,538, which was counsels' lodestar multiplied times two.  The amount was upheld on appeal.  The analysis in that matter is exactly what the Court should apply here.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

*Cases*, 175 Cal.App. 4th 545, 556–57 (2009).   In determining a reasonable rate, the court is to consider the "experience, skill and reputation of the attorney requesting fees." *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996).   The court also considers "the prevailing market rates in the relevant community." *Blum v. Stevenson*, 465 U.S. 886, 895 (1984).   The court may then enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the result achieved for the class. *Serrano v. Priest,* 20 Cal.3d 25, 49 (1977).   Courts also allow recovery of pre-settlement litigation costs in the context of class action settlements. *Staton v. Boeing Co*., 327 F.3d 938, 974 (9th Cir. 2003).   Class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h) (emphasis added).   The requested fees are fully supported under the Lodestar approach.   Courts will normally assess the reasonableness of fees under a clear sailing provision where the parties have agreed upon the fee award as part of the Class Settlement.   Such circumstances will require the Court to undertake additional analysis to ensure that the fee requested as part of the Settlement is fundamentally fair reasonable and adequate, so that it can be ensured that there has been no collusion between the parties. *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003).   However, this is not relevant in the case at bar, because there was no clear sailing provision in the Agreement.   Plaintiff is free to request any fee, as the prevailing party, and Defendant is free to oppose the reasonableness of that fee.   Thus, the only relevant concern for The Honorable Court's analysis is how many hours were spent, what the hourly rates are, and whether the hours and

rates are reasonable under prevailing standards.[9]  In many ways, this is like any fee brief in a case involving a judgment under a fee shifting statute.  Assuming there are no Class Member objections (unlikely since there were no objections to the Settlement), The Honorable Court should analyze the Motion at bar just like it analyzed other fee shifting attorneys' fees motions, such as in the case of *Randall May Intern., Inc. v. DEG Music Products, Inc.*, 2013 WL 1344915 (C.D. Cal. April 2, 2013) (determine reasonable hourly rates, add up the hours, exclude redundant hours, account for skill and experience of attorneys, and multiply).

Courts are especially inclined to award full fees under the lodestar method when the attorneys' fees provision of a settlement agreement does not tie the fee payment to the recovery of the aggregate class settlement that would be received by Class Members.  *Eisen v. Porsche Cars North America, Inc.*, 2014 WL 439006 *9-12 (C.D. Cal. Jan. 30, 2014) (holding that any such objection would be "without merit"); *see also Lilly v. Jamba Juice Company,* 2015 WL 2062858 (N.D. Cal. May 1, 2015); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 10277179 *8 (N.D. Cal. Jan. 6, 2012);[10] *Roberts v. Electrolux Home Products,*

---

[9] For this reason, factors such as the fairness of the fee requested as compared with the class member recovery, the fact that fees were negotiated at arm's length, in the context of a mediation, and other considerations which might lend themselves to aiding the court in determining that there was no collusion or fraud are all irrelevant here.  The Parties did not agree on any amount to be awarded to Class Counsel.  This was the most ethical way of handling the situation, and frankly, is the way that all Plaintiffs' counsel should do things in non-common fund class settlements.

[10] "Here, class counsel's accounting, documented in extensive declarations accompanying its motion, evidences the significant financial burden entailed by prosecuting a case such as this. While recognizing that the benefits flowing from the proposed settlement here are somewhat limited due to the intervening effect of the CARB MOU, it is clear from the record that the hours expended by plaintiffs' counsel and the requested fees are reasonable, given the tasks that were accomplished, and taking into consideration the 'experience, skill and reputationof the attorney[s] requesting the fees.' *Trevino*, 99 F.3d at 924."

- 10 -
**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

*Inc.*, 2014 WL 4568632 (C.D. Cal. Sept 11, 2014); *Sadowska v. Volkswagen Group of America, Inc.*, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013).

For reasons described herein, Class Counsel respectfully assert that (A) the requested fee award of $1,157,352.00 is fair, reasonable, and justified; and (B) the payment of $98,428.40 in costs is fair and reasonable.

## B. The Requested Fee is Reasonable, Fair and justified Under the Lodestar Method

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975).[11] Plaintiffs' requests only reasonable Lodestar, to be paid at hourly rates that have been approved by courts, for hours that were reasonably and necessarily incurred in litigating the rights of the Class, and for costs that were necessary in this Class Action matter to advance the rights of Class Members. Several points are worth mentioning as to why these fees should be awarded in full.

- The case was litigated for three years, which included numerous dispositive motions, four separate lawsuits, a class certification motion which was granted, class notice paid for by Class Counsel,

---

[11] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc*., 2007 WL 221862, at *16 (N.D. Cal. 2007).

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

the hiring of two experts, and after three mediation sessions. The amount of fees incurred were necessary and reasonable.

- There is no clear sailing provision for the fees, because undersigned counsel incurred a very high fee bill as of the time that the mediation was agreed upon. It was important due to the disproportionate nature of fees to recovery that there be no agreement to a number between the parties. This was the most ethical approach.

- The Class was certified by contested motion, heightening both the amount of time and expenditure in the case, as well as the care and detail given by counsel under their fiduciary duty to class members. This is important under *Bluetooth*.

- There are three fee shifting statutes at issue in this matter, and Plaintiffs were deemed the "prevailing party" as a condition of settlement, which means that only the reasonableness of the fees incurred can be analyzed or disputed.

- The class will not receive even a penny more or less regardless of the amount of fees awarded to Class Counsel. Given the intentional nature of the conduct by HP, full fees should be awarded to deter HP from engaging in false advertising in the future.

The Court should approve the award of the requested attorneys' fees and costs to compensate Class Counsel for their time and efforts in litigating this case on behalf of the Class and the named Plaintiffs, having obtained outstanding results for the Class.

### 1. Class Counsels' lodestar is reasonable

The accompanying declaration of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar. Plaintiffs' attorneys' work is summarized as follows:

| NAME | HRS INCURRED | RATE | TOTAL |
|---|---|---|---|
| Todd M. Friedman – Managing Partner | 435.6 | $725 | $315,810.00 |
| Adrian R. Bacon – Partner | 1,209.7 | $625 | $756,062.50 |
| Meghan George – Senior Associate (8 years) | 21.5 | $575 | $12,362.50 |
| Thomas Wheeler – Associate | 62.1 | $370 | $22,997.00 |

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

| | | | |
|---|---|---|---|
| (3 years) | | | |
| Yoel Hanohov – Law Clerk/Junior Associate (1 year | 214 | $175 | $37,485 |
| Gianfranco De Girolamo (Law Clerk) | 72.2 | $175 | $12,635 |
| **TOTAL[12]** | **2,015.1** | | **$1,157,352.00** |

Friedman Decl. Ex A.  As described in the accompanying declarations, Plaintiffs' attorneys have devoted a total of 2,015.1 hours to this litigation to date, and have a total lodestar to date of $1,157,352.00.   Plaintiffs do not request any multiplier.[13]  These amounts do not yet include an estimate of the additional time that Class Counsel will spend going forward in seeking final approval of, and implementing the Settlement, including assisting Class Members with claims and overseeing claims administration.  Such will likely take another 30-40 hours of time, for which Plaintiffs do not seek any fees, in order to be reasonable.[14]

Thus, Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple attorneys working on this case.   In this regard, tasks were reasonably divided among attorneys to ensure avoiding the replication of work. Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates

---

[12] Time was spent by paralegals on this matter as well over the last three years, but for purposes of this Motion, Plaintiffs do not request such compensation.

[13] *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier).

[14] Class Counsel file this fee brief sixty (60) days prior to the hearing on Final Approval.  To date, no Class Members have filed any objections.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

billed time only where necessary.[15]  Given that this was a class action case, most of the tasks were completed by the partners, but items such as legal research and document review were shared and completed by junior associates or law clerks. In addition, Class Counsels' contemporaneous time records were carefully reviewed.  Friedman Decl., ¶ 83-102, Ex A.

### 2.  Class Counsels' hourly rates are reasonable

Similarly, Class Counsels' hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here.  *See* Friedman Decl., ¶¶ 74-82.   Mr. Friedman and Mr. Bacon are also very experienced in litigating consumer class actions.  *Id*.

According to the well-respected Laffey Matrix, last reviewed on September 2, 2018, reasonable rates for a Partner of a law firm practicing 11-19 years are calculated at $742 per hour.  Friedman Decl. Ex. B.  Mr. Friedman has dedicated his career to consumer protection litigation, including class action litigation under various consumer protection statutes.  He has secured eight figure class-wide settlements on behalf of millions of consumers nationwide.  Thus, the billing rate for Mr. Friedman of $725 per hour is well within the normal range of fees

---

[15] Hours for paralegals and support staff are recoverable, but were zeroed for purposes of this Motion.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

charged by firms in Southern California for partner work.[16]

Additionally, Adrian R Bacon, who has been the primary attorney handling this litigation, has significant experience in litigating consumer class actions, including false advertising class actions, which justifies his hourly rate of $575. Friedman Decl. ¶¶ 89-99. Mr. Bacon is a Partner at The Law Offices of Todd M. Friedman, P.C. He has recently been approved in numerous class action fee motions wherein Mr. Bacon requested an hourly rate of $575 per hour. Along with Todd Friedman, Mr. Bacon is the primary managing attorney who oversees litigation efforts in the majority of class action litigation at The Law Offices of Todd Friedman. Such efforts included the drafting of class certification motions in five federal consumer class actions which were certified by contested motion under Rule 23. According to the same Laffey Matrix, reasonable rates for a partner with eight years' experience associate are calculated at $658 per hour. See Exhibit B to Friedman Decl. Thus, the billing rate for Adrian R. Bacon is well within the normal range of fees charged by firms in Southern California. Mr. Bacon and Mr. Friedman are currently serving as class counsel in seven class actions which were certified by contested motion. Surely the time spent on this case could have very well been spent on their other class action matters.

Junior Associate Thomas E. Wheeler is a Third Year associate, who has extensive experience working on consumer protection class actions in his short time practicing. *Id.* He assisted throughout the recently certified class actions of *Caldera v. American Medical Collection Agency*, 2017 WL 2812898 Case No. 2:16-cv-0381-CBM-AJWx (C.D. Cal. June 27, 2017) and *Makaron v. Enagic*

---

[16] See *Hartless v. Clorox Co*., 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), aff'd in part, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008) (partner rates of $750 to $475 and associate rates of $425 to $275 are reasonable).

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

*USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. March 13, 2010).  According to the same *Laffey* Matrix, reasonable rates for a junior associate are calculated at $371 per hour.  See Exhibit B to Friedman Decl.  Thus, the billing rate for Thomas E. Wheeler of $370 per hour is well within the normal range of fees charged by firms in Southern California.[17]  Hence, Class Counsels' combined lodestar of $1,157,352.00 is reasonable and supports the requested fees.

### 3. Class Counsel Have Obtained Excellent Results For The Class By Any Measure

Plaintiff Anne Wolf filed a Class action on behalf of purchasers of P1102w printers whose boxes at the point of sale were mislabeled as containing a printer that came with the Smart Install Feature, a feature of convenience which made installing the printer onto ones computer easier and more convenient.   There were several ultimate questions in this case that guided the litigation, as well as settlement considerations:

How broad of a class could be certified? (if any)

Was the mislabeling material and therefore unlawful?

How much money were class members owed?

How many Class Members Would Receive Relief?

With respect to the first question, Plaintiffs did not settle this case pre-certification because the parties reached an impasse at the first mediation, and during a second more informal mediation session.  Instead of settling for a subpar result for the Class, Class Counsel decided further litigation was necessary. Judge O'Connell eventually certified the class action, but narrowed the class to purchasers of p1102w printers who made their purchases in brick and mortar stores in California and who were consumers.   Plaintiff Wolf proved that

---

[17] Mr. Hanohov could very well have been billed at $370 per hour for half of his time, but counsel used the $175 per hour law clerk rate, again, trying to be reasonable in the requested fees.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

certification was appropriate generally, and Plaintiffs' counsel ultimately was successful at broadening this class (by filing three separate lawsuits) to include all purchasers (including business purchasers, and online purchasers), in both California and Texas, and by expanding to another high volume printer (LaserJet Pro 200 Color MFP M276nw).  In the context of this litigation, Class Counsel was highly successful at achieving a broad class settlement, and stipulated certification agreement from Defendant, by way of both certifying a narrower class by contested motion, expanding the Class through litigation efforts in three separate lawsuits, and hard fought negotiations leading up to and at mediation.

With respect to damages, as argued throughout this case, and as observed by Judge O'Connell in her Class Certification Order (Dkt. No. 94), "restitution is available on a classwide basis once the class representative makes the threshold showing of liability."  Restitution in this case came down to what portion of the (on average) purchase price (P1102s sell for $100-$130 retail typically) would be an appropriate recovery in the context of the false advertising at issue. Discussions with Plaintiffs' experts in conjoint surveys indicated that marketing damages analysis takes a list of features for the product in question, and isolates the variable value on average of each feature to a reasonable consumer sample. The Class Printers came with dozens of features, most important of which was the fact that they could be used to print documents.  Ultimately that is the most important feature, comprising most of the value of the product.  Style and convenience features all carried value as well but were of lesser value on the whole.  The Smart Install feature, while important to consumers, was not the only reason people bought Class Printers.  It may have made up 10% or less of the product's value, and ultimately, the settlement achieved twice that figure for Class Members.  In the full context of what this case is about, the result achieved per Class Member is fairly remarkable, because it was likely more than the Class would have recovered at trial if Plaintiffs prevailed.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

With respect to participation, there was an outpouring of claims made in this case, at a much higher percentage than is typical in consumer class actions involving false advertising of low priced goods. Normally, one would expect to see something in the 3-5% take rate range, but here, the take rate is over 15%.[18] No doubt this was a result of the strong efforts of Plaintiffs' counsel in subpoenaing all of the retailers on multiple occasions, and fighting hard with major retailers like Amazon, to ensure the best notice possible reached the Class in a targeted manner. The placement of exactly what benefits would be received on the notice itself also no doubt had an effect on this. Class Members were happy with the result, because the result made sense, and they participated at a high rate, showing that this was an outstanding settlement.

There can be very little argument that the result achieved by Class Counsel was not a strong one. While it is true that fees are much higher than the amounts received by the Class, it is not due to those fees being unreasonable, duplicative or unnecessary, merely a result of the facts of the case: 50,000 Class Printers, roughly $100 each, with a partial refund being the restitutionary remedy. The math of what the class could be owed under the facts of this case certainly line up with or exceed what they were eligible to receive. If this case involved a breach

---

[18] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D.Mich.2003) (finding favorable class reactions in a 6.9% response rate—1800 proofs of claim out of 26,000 notices sent—and a 9% response rate—37,000 proofs of claim out of over 400,000 notices sent); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 (D. Me. April 13, 2011) (finding favorable class reaction in a 3.9% response rate—438,169 claims out of 11.3 million eligible claimants); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 397, 406 (D.Mass.2008) (approving entire amount of attorneys' fees request after previously approving settlement with response rate of slightly more than 3%); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F.Supp.2d 320, 321 (D.Me.2005) (noting prior approval of settlement that yielded 2% claim rate); *Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167, 169, 172 (W.D.La.1997) (noting prior approval of settlement that yielded 4.3% claim rate).

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

of warranty claim on a vehicle requiring an engine replacement, with $10,000 in damages, expert fees of $20,000, and $100,000 in fees to achieve remuneration at trial for the plaintiff, those fees and costs would be reasonable.  This case is no different.  So have several courts recognized in class action settlements involving a fee shifting statute with fees awarded separately from the class recovery.

As cited above, *Eisen v. Porsche Cars North America, Inc*., 2014 WL 439006 *9-12 (C.D. Cal. Jan. 30, 2014) held that the disproportionality of a fee to the class recovery in a case where the amounts are not related to one another, where there is a fee shifting statute, and where there is no evidence of collusion is a concern that is ultimately without merit"[19]

In *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Cal. 2010), the prevailing plaintiffs sought nearly $8 million in fees for over 8,000 hours expended in a non-common fund class settlement (almost identical circumstances to the case at bar).  The case involved four years of litigation, hard fought efforts by the defendant to dispense with the litigation, numerous mediation attempts, until finally a settlement was reached where 50-100% of repair costs for vehicle defects would be paid by Honda on behalf of a relatively small class.  Attorney's fees would be separately awarded, but were challenged by Honda.  The court went through the exact analysis Plaintiffs propose herein, and determined that a straight lodestar with no multiplier was appropriate and awarded that amount (the same amount Plaintiffs as of This Court).[20]

---

[19] The Court in a claims made settlement with a 1% take rate, applied the lodestar method found that the fees requested were reasonable because they were not tied to the amount the class was receiving.  In the case at bar, the take rate is over 15%, and the same logic applies.

[20] This is the case that is most on point out of hundreds of cases that were researched on this issue, because most settlements have a clear sailing provision.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

*Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) involved a coupon settlement, where class members would receive $2 per day rental car coupons if they made claims. The attorneys requested nearly $6 million in fees, plus over $700,000 in costs, and agreed to clear sailing with defendant. The fees were negotiated in mediation. There were 12 objections to the settlement, and only a 4.9% claims rate. The court found no collusion and found that the lodestar method was appropriate because the award would not impact class member recovery. The case at bar is much stronger because there was no clear sailing, class members are receiving monetary relief not coupons, the take rate was higher, and there were no objections.

*Kulesa v. PC Cleaner, Inc.*, C.D. 2014 WL 12581770 (C.D. Cal. Aug. 26, 2014) involved a false advertising class action settlement with a claims made settlement where claimants would receive a $10 refund off the purchase price of the product if they submitted a valid claim. The fees were separately negotiated apart from class member recoveries, like the case at bar. Counsel requested and was awarded a lodestar multiplier by the court. Prevailing case law attributable to the situation at bar all point to an award of Class Counsel's lodestar being the appropriate result that should be reached by This Honorable Court.

**C. The Risks of Litigation Support the Requested Fees**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008). *See also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). Throughout litigation and mediation, Defendant raised defenses to the merits of its practices on the basis that the mislabeling was not material, and to the certifiability of the action on a dozen different theories as can be seen from the contested certification briefing. There were challenges to the appropriate remedy,

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

the appropriate scope, to procedural issues, and whether this should be a case at all.  This case had a lot of risk.  Class counsel spent nearly $100,000 litigating this case, with an original client who purchased a printer for $130.  That's a very risky endeavor for a small law firm with five attorneys.

While both sides strongly believed in the merits of their cases, there are risks to both sides in continuing the Litigation.  See Friedman Decl, ¶¶ 52-60.  If the Litigation were to continue, challenges would likely be made to decertify the action, and challenge it at summary judgment before trial.  Moreover, there would be challenges in proving damages.  In considering the Settlement, Plaintiffs and Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.   The Court agreed with this reasoning in preliminarily approving the settlement.   Thus, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but further support the reasonableness of the requested fees.

### D. The Skill Required and Quality of Work Performed Support the Requested Fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047.  Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous consumer class actions (currently appointed as class counsel in seven class actions certified by contested motion).   Class Counsel have successfully prosecuted numerous complex consumer class actions, and have secured noteworthy recoveries for those classes.  *See* Friedman Decl., ¶¶ 52-85. Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive written discovery

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

including the production of nearly a hundred thousand pages of documents and voluminous data from Defendant and third parties, engaged in protracted motion practice, and engaged in additional mediation discovery. See Friedman Decl., Ex A.   A number of complex motions were researched, filed and opposed, any of which could have dispensed with the case, or effectively done as much (if certification was denied).   Thus, Class Counsels' skill and expertise, reflected in the significant Settlement, supports the requested fees.

### E. Class Counsels' Undertaking of this Action on a Contingency-Fee Basis Supports the Requested Fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work.   *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th  Cir. 1994)  ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery.   *See* Friedman Decl., ¶¶ 83-85.   In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the actions; (2) conducting extensive discovery on Defendant and third parties including roughly 20 subpoenas, multiple depositions and review of roughly 100,000 pages of documents; (3) opposing numerous motions to dismiss; (4) engaged multiple

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

experts for certification, merits and damages issues; (5) moved for and was awarded class certification status; (6) negotiating the Settlement in private mediation (three sessions over three years), and following mediation; (7) coordinating discovery with nearly twenty third party competitors and retailers for damages and class member identification data; (8) Class counsel will also be required to oversee administration of the Settlement; and, (9) respond to Class Member inquiries.  Class Counsel expended these resources despite the risk that Class Counsel may never be compensated especially in light of the difficulty in securing class certification.

Class Counsel here incurred $98,428.40 in costs and spent 2,015.1 hours litigating this action.  Friedman Decl., ¶¶ 83-99 and Ex. A.  Thus, Class Counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter.  *Omnivision*, 559 F. Supp. 2d at 1047.  As articulated above, the lodestar method is the preferred and most widely used method for determining attorneys' fees in a fee shifting case. The requested fees are fully supported by the factors enunciated under applicable case law and are commensurate with the excellent results obtained for the Class and is comparable or in excess of settlements in other cases, as discussed *supra*.

## F.  The Requested Costs Are Fair And Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."  *In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation

expenses are relevant and necessary expenses in class action litigation).  Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $98,428.40.  *See* Friedman Decl., ¶¶ 83-99.  These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.  The costs were considerable because of the length of litigation.  Costs included expert expenses, mediation fees, service fees for service of complaints, of subpoenas and of discovery both on defendants and subpoenas on third parties, as well as the considerable expense of sending class notice following certification, which was borne by undersigned counsel prior to any settlement being negotiated.  Spending six figures out of pocket for a small firm, while manageable in worthy and important cases, is a risky undertaking, and all of these expenses should be reimbursed.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, the request for costs of $98,428.40 is reasonable.  Class Counsel will likely incur additional costs as this case moves to the final approval stage.

### G. Class Representatives' Application For Incentive Awards

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000 for Anne Wolf and $2,000 to the other three Class Representatives, subject to Court approval.  HP has agreed not to oppose the request. District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable.[21]

---

[21] *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-43 (9th Cir. Feb. 27, 2015); *In re Toys R Us – Delaware, Inc. – Fair and Accurate*

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

Plaintiffs each served a pivotal role in this case.  Plaintiff Anne Wolf contributed dozens of hours of effort to this litigation, including answering written discovery and sitting for a deposition.  Fehrenbach, Romero, and Sergi all stepped in and agreed to serve as Class Representatives to assist Class Counsel in broadening the scope of the Class and helping more consumers. Plaintiffs assisted in the litigation by providing documents and information to counsel, participating in the motions and settlement discussions, and reviewing and approving the settlement on behalf of the Class.  Plaintiffs acted dutifully in their roles as a class representatives, and should be awarded this reasonable sums requested herein for their part in the litigation.

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiff's motion for an award of attorneys' fees in the total amount of $1,157,352.00 (Class Counsel's reasonable lodestar), litigation costs of $98,428.40, reasonable costs of administration to KCC, and Class Representative Incentive Awards of $5,000 for Wolf and $2,000 for Fehrenbach, Sergi and Romero.

Date: September 4, 2018                **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

---

*Credit Transactions Act (FACTA) Litigation*,  295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014).

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 4th day of September, 2018, with:

United States District Court CM/ECF system

Notification sent electronically on this 4th day of September, 2018, to:

Honorable Judge Terry J. Hatter
United States District Court
Central District of California

Michael J. Stortz
Marshall L. Baker
AKIN GUMP STRAUSS HAUER & FELD LLP

<u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**